## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|                                              |   |                            |
|----------------------------------------------|---|----------------------------|
| **ERIC J. BURNS,**                           | * |                            |
|                                              | * |                            |
| **Plaintiff,**                               | * |                            |
| **v.**                                       | * | Civil Case No. SAG-20-1991 |
|                                              | * |                            |
| **WASHINGTON METROPOLITAN AREA**             | * |                            |
| **TRANSIT AUTHORITY,**                       | * |                            |
|                                              | * |                            |
| **Defendant.**                               | * |                            |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## <u>MEMORANDUM OPINION</u>

Plaintiff Eric J. Burns ("Plaintiff") filed a Complaint in the Circuit Court for Anne Arundel County, Maryland against Defendant Washington Metropolitan Area Transit Authority ("WMATA"), seeking tort and contract damages for injuries he suffered during an attack by fellow passengers on a WMATA-operated Metro train. ECF 2. WMATA removed the case to this Court, ECF 1, and filed a Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim ("the Motion"), ECF 8. This Court has considered the Motion, along with Plaintiff's Opposition, ECF 11, and WMATA's Reply, ECF 13. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons that follow, the Motion will be granted.

## I.      FACTUAL BACKGROUND

These facts are derived from Plaintiff's Complaint, and are taken as true for purposes of adjudicating this Motion. Plaintiff is a resident of Cheverly, Maryland. ECF 2 ¶ 1. On April 20, 2017, Plaintiff was traveling home on an WMATA-operated Orange Line train. *Id.* ¶ 4. At the Capitol South Station in Washington, DC, a group of juveniles attacked and severely beat Plaintiff, while stealing his headphones and his cell phone. *Id.* The juveniles disembarked at the Capitol South station, leaving Plaintiff bleeding and beaten on the floor of the rail car. *Id.* Plaintiff

suffered severe physical injuries, including partial permanent facial paralysis, in addition to economic losses and emotional distress. *Id.* ¶¶ 7, 21

The juveniles who attacked Plaintiff had previously attacked and robbed other WMATA train riders. *Id.* ¶ 5. In fact, WMATA had prohibited individuals within the group from using WMATA trains. *Id.* However, on April 20, 2017, WMATA did not prevent the juveniles from riding the Orange Line train. *Id.* Plaintiff alleges that there was insufficient security present on his train and in the Metro Station to prevent or stop the attack, or to apprehend the perpetrators. *Id.* ¶ 6.

## II.    LEGAL STANDARDS

WMATA has now filed a motion to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Initially, WMATA challenges "whether the court has the competence or authority to hear the case" under Federal Rule of Civil Procedure 12(b)(1), citing its sovereign immunity. When a defendant challenges subject-matter jurisdiction in that manner, the court is to regard the pleadings "as mere evidence on the issue, and may consider evidence outside the pleadings...." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (citing *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)). Furthermore, the plaintiff bears the burden of proving that the court has subject-matter jurisdiction. *Id.* Sovereign immunity acts as a limiting principle on the jurisdiction of federal courts because "[t]he United States, as sovereign, is 'immune from suit save as it consents to be sued...and the terms of its consent to be sued in any court define that court's jurisdiction to entertain suit.'" *Hercules, Inc. v. United States*, 516 U.S. 417, 422 (1996) (quoting *United States v. Testan*, 424 U.S. 392, 399 (1976)).

In the alternative, WMATA argues that Plaintiff has failed to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  ECF 24.  A defendant is permitted to test the legal sufficiency of a complaint by way of a 12(b)(6) motion.  *See, e.g.*, *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016).  Such a motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Rule 8(a)(2), which provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Id.* at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions.'"); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).  But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2).  *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."  *Johnson v. City of Shelby*, 574 U.S. 10, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation.  *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the

elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). However, a court is not required to accept legal conclusions drawn from the facts. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts generally do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses" through a Rule 12(b)(6) motion. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999) (quoting *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009).

Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint,'" *Goodman*, 494 F.3d at 464 (emphasis omitted) (quoting *Forst*, 4 F.3d at 250).

## III.   ANALYSIS

### A.  Removal

Although the propriety of removal was not raised in WMATA's Motion, and although Plaintiff did not file a motion to remand within 30 days as required by 28 U.S.C. § 1447(c), Plaintiff's Opposition contends that this case was improperly removed to this Court. Plaintiff's contention is unavailing. The District of Columbia, the State of Maryland, and the Commonwealth of Virginia created WMATA pursuant to an interstate compact ("the WMATA Compact"), which received Congressional approval. *See, e.g.*, *Smith v. WMATA*, 290 F.3d 201, 206 (4th Cir. 2002). The WMATA Compact is codified in the laws of all three signatory jurisdictions. *See, e.g.*, D.C. Code § 9-1107.1; Md. Code Ann., Transp. § 10-204. WMATA's removal of this case relied, not on more customary diversity or federal question jurisdiction, but on the original jurisdiction explicitly afforded the federal courts by the WMATA Compact, which provides:

> The United States District Courts shall have original jurisdiction, concurrent with the courts of Maryland, Virginia, and the District of Columbia, of all actions brought by or against [WMATA] and to enforce subpoenas issued under this title. Any such action initiated in a State or District of Columbia court shall be removable to the appropriate United States District Court in the manner provided by Act of June 25, 1948, as amended (28 U.S.C. § 1446).

WMATA Compact, Public Law 89-774, ¶ 81, approved by Congress on November 6, 1966, as amended, and codified at Md. Code Ann., Transp. § 10-204(81). Thus, this Court unequivocally has jurisdiction over this case, because it is a case brought against WMATA. In addition, the Court finds no defects in the removal process. The Notice of Removal, ECF 1-1, appropriately cites Md.

Code Ann., Transp. § 10-204(81) as the required "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). All relevant documentation was attached, including the Statement Regarding Removal, ECF 1-9, and the Civil-Non-Domestic Case Information Report, ECF 1-9. No Order of Removal is required by 28 U.S.C. § 1446, either, despite Plaintiff's unsubstantiated contentions. Regardless, Plaintiff did not timely file a motion for remand on any procedural grounds. *See* 28 U.S.C. § 1447(c) ("A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)."). Remand is therefore unwarranted even if it had been properly sought, and the Court will proceed to consider the merits of WMATA's Motion.

### B. Sovereign Immunity

In the WMATA Compact, the three sovereigns who created WMATA provided that it would enjoy sovereign immunity. Specifically, Section 80 of the WMATA Compact states:

> [WMATA] shall be liable for its contracts and for its torts and those of its Directors, officers, employees and agents committed in the conduct of any proprietary function, in accordance with the law of the applicable signatory (including rules on conflict of laws) but shall not be liable for any torts occurring in the performance of a governmental function.

Md. Code Ann., Transp. § 10-204(80).

Plaintiff's three tort claims, for negligence, gross negligence, and intentional infliction of emotional distress, allege that WMATA did not adequately provide security services or protect him from the harm he suffered in the attack. Protection of customers' security is within the purview of law enforcement, and the WMATA Compact specifically authorizes the establishment of a police force to provide such services. Md. Code Ann., Transp. 10-204 (76a) ("[WMATA] is authorized to establish and maintain a regular police force, to be known as the Metro Transit Police, to provide protection for its patrons, personnel, and Transit facilities."). Law enforcement,

generally, is viewed as a quintessential government function. *See, e.g.*, *Beebe v. WMATA*, 129 F.3d 1283, 1287 (D.C. Cir. 1997) (quoting *Burkhart v. WMATA*, 112 F.3d 1207, 1216 (D.C. Cir. 1997) ("To distinguish governmental from proprietary functions, [courts] ask whether the activity amounts to a quintessential governmental function, like law enforcement.").[1]  Specifically, courts have deemed WMATA's police activities to be an exercise of a governmental function. *See, e.g.*, *Davis v. TSA*, 264 F. Supp. 3d 6, 11 (D.D.C. 2017) (quoting *Dant v. District of Columbia*, 829 F.2d 69, 74 (D.C. Cir. 1987); *Morris v. WMATA*, 781 F.2d 218, 219 (D.C. Cir. 1986) ("If the operation of a police force is not a governmental function, then a governmental function may not exist.") (quoting *Martin v. WMATA*, 667 F.2d 435, 436 (4th Cir. 1981)).

Recently, the United States District Court for the District of Columbia concluded that WMATA was entitled to sovereign immunity in a case presenting similar facts.  A female passenger on a WMATA train suffered a horrific rape, committed by a perpetrator who had previously been identified by WMATA as having publicly masturbated on its trains.  *Doe v. WMATA*, No. 19-CV-1298 (KBJ), 2020 WL 1429937, at *1 (D.D.C. Mar. 24, 2020).  WMATA had not identified the perpetrator to its other passengers, or tried to prevent him from riding its trains.  *Id.*  In ruling that the woman's tort claims were barred by sovereign immunity because they focused on WMATA's failure to take certain actions in response to the prior masturbation incidents, the court reasoned:

> [I]t is clear beyond cavil that, after a crime has been committed and "the WMATA transit police are involved, WMATA's function is governmental in nature." *Davis v. Sarles*, 134 F.Supp.3d 223, 227 (D.D.C. 2015); *see also Burkhart v. WMATA*, 112 F.3d 1207, 1216 (D.C. Cir. 1997) (explaining that "police activity" is a quintessential government function); *Martin v. WMATA*, 667 F.2d 435, 436 (4th

---

[1] Many of the cases cited herein emanate from the District of Columbia Circuit.  Although those rulings are non-binding, the Fourth Circuit has recognized the value in considering that court's opinions to "render[] circuit law consistent in the two federal circuits most likely to hear cases in which WMATA is a party." *Lizzi v. Alexander*, 255 F. 3d 128, 134 (4th Cir. 2001).

Cir. 1981) ("The operation of a police force is a quintessential government function"). Thus, the bulk of the claims that Doe brings in this lawsuit fail to clear the sovereign-immunity bar at the outset, because any alleged negligent failure of the agency to respond to potentially criminal behavior by one of its customers in a certain manner – even one that, according to Doe, the general duty of reasonable care requires – involves the exercise of a quintessential governmental function of the agency.

*Id.* at *5. Plaintiff's tort claims, similarly, relate to WMATA's alleged failure to act appropriately in response to its knowledge of his assailants' prior conduct. His tort claims are likewise barred by sovereign immunity, then, because they implicate the quintessential governmental function of law enforcement.

This Court acknowledges that Count III of Plaintiff's Complaint purports to assert a breach of contract claim, which would not, on its face, be barred by sovereign immunity. It is, of course, likely that some form of implied contract exists between WMATA and its rail passengers. Plaintiff, however, has not pled any particular contractual terms that he contends were part of the contract he alleges to have been breached, ECF 2 at 5, and thus he has failed to state a claim upon which relief can be granted. Moreover, Plaintiff cites no authority, and the court is not aware of any, permitting a cause of action for breach of contract where WMATA is alleged to have failed to provide safe and secure transportation to a passenger. In fact, in *Whitaker v. WMATA*, 889 F. Supp. 505, 507 (D.D.C. 1995), the court rejected the plaintiff's assertion of a breach of contract claim against WMATA where a bus driver's failure to lower a bus step caused a passenger injury, and held "that any breach of WMATA's duty of care was not a breach of a contractual duty but of a legal duty," because "the gravamen of [plaintiff's] claim is for personal injury." In so holding, *Whitaker* relied on the "longstanding rule of law" derived from *Prosser and Keaton on the Law of Torts*, which provides that in cases for "damages to property or to pecuniary interests only," a plaintiff may be permitted to elect whether to pursue claims in tort or contract, but "when the claim

is one for personal injury, the decision usually has been that the gravamen of the action is the misconduct and the damage, and that it is essentially one of tort, which the plaintiff cannot alter by his pleading." The *Whitaker* court required the plaintiff to "plead this claim as a negligence action."[2] *Id.*

Plaintiff's claim is indistinguishable from *Whitaker* on the salient points. Plaintiff pleads that his payment of a fare created a contract with WMATA and that, "[p]ursuant to that contract [WMATA] owed [Plaintiff] a duty of care, and an obligation, to protect [Plaintiff] from all known and unknown risks to [Plaintiff's] person and property." ECF 2 ¶ 19. In other words, Plaintiff seeks to read a traditional tort duty of care, for which Plaintiff's claim would be barred by sovereign immunity, into an undefined and apparently implied contract. As the *Whitaker* court described, allowing a breach of contract claim to proceed in this context would make it "necessary to establish the contours of the implied contract, i.e., what duties the parties owed each other. But journeying down this path would merely lead the Court back to the beginning of its analysis, namely, determining WMATA's legal duty to its passengers." *Id.* at 507. Plaintiff cannot avoid the application of sovereign immunity, then, simply by couching his traditional personal injury "breach of duty of care" claim as contractual rather than tortious.

Finally, sovereign immunity "is not truly a limit on the subject matter jurisdiction of federal courts, but a block on the exercise of that jurisdiction." *Biggs v. Meadows*, 66 F.3d 56, 60 (4th Cir. 1995) (discussing the Eleventh Amendment). Indeed, "the bar of sovereign immunity is absolute: no other court has the power to hear the case, nor can the [plaintiffs] redraft their claims

---

[2] Courts in other jurisdictions have similarly concluded that "the duty of a common carrier to its passengers [lies] in tort, not in contract." *Roses v. Nat'l R.R. Passenger Corp.*, 2001 WL 1117166, at *6 (W.D.N.Y. Sept. 20, 2001); *Adams v. New York City Transit Auth.*, 211 A.D.2d 285, 294 (1995), aff'd, 666 N.E.2d 216 (1996) ("The theory of a 'contract of safe passage' is no longer viable . . . .").

. . . ." *Frigard v. United States*, 862 F.2d 201, 204 (9th Cir. 1988).  It is therefore appropriate for this Court to dismiss Plaintiff's claims, on sovereign immunity grounds, with prejudice.  *See, e.g.*, *Int'l Fed'n of Prof'l & Tech. Eng'rs v. United States*, 934 F. Supp. 2d 816, 820 (D. Md. 2013) ("[T]he United States is dismissed from this action, and the claims against it are dismissed with prejudice."), aff'd sub nom. *Int'l Fed'n of Prof'l & Tech. Eng'rs v. Haas*, 599 Fed.App'x. 477 (4th Cir. 2014); *Best Med. Belgium, Inc. v. Kingdom of Belgium*, 913 F. Supp. 2d 230, 233 (E.D. Va. 2012) (dismissing with prejudice a claim barred by sovereign immunity).

## IV.  CONCLUSION

For the reasons set forth above, WMATA's Motion to Dismiss, ECF 8, will be GRANTED, and Plaintiff's claims will be dismissed with prejudice.  A separate implementing Order follows.


Dated:  September 18, 2020                                     /s/

                                                    Stephanie A. Gallagher
                                                    United States District Judge